## APPEAL OF S. NEWTON PETTIS, ET AL.

### [LENHART v. PETTIS, ET AL.]

#### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY.

Argued May 1, 1889—Decided May 13, 1889.

If, upon a rule to strike off the satisfaction of an old judgment and open the same, to permit usurious interest therein to be set up as a defence to a subsequent judgment for the same debt, it appear that the satisfaction was entered at the instance of the defendant, and not fraudulently as a device to cover up usury, it is not error to refuse the application.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 465 January Term 1889, Sup. Ct.; court below, No. 299 January Term 1876, and No. 768 February Term 1879, C. P.

On January 21, 1876, on a note with warrant of attorney, judgment was entered to No. 299 January Term 1876, in favor of J. H. Lenhart, cashier, in trust for the Peoples Savings Bank, against S. Newton Pettis, A. S. Beatty and R. P. Miller, for the sum of $2,667, with interest from January 14, 1876.

On May 24, 1876, this judgment was satisfied in full of debt, interest and costs.

On February 13, 1882, upon petition of S. Newton Pettis and R. P. Miller, a rule was granted to show cause why a judgment, entered to No. 768 February Term 1879, should not be opened and the defendants let into a defence, and why the satisfaction entered upon judgment to No. 299 January Term 1876, should not be stricken off and said judgment also opened to let defendants into a defence.

Upon the foregoing rule, the only testimony filed was the deposition of S. Newton Pettis, who testified as follows:

In the spring of 1872, I was indebted to the Peoples Savings Bank, of Meadville, a little over $1,500, which indebtedness was soon increased to over $2,500, about $2,537, which the bank continued to carry for me, on my paying interest upon the same at the rate of twelve per cent per annum, until the spring of 1877, during which time I paid the bank upon such indebtedness usurious interest, which with the interest upon such usurious amounts paid at different times, amounted to the sum of $835.37, upon the 23d day of April, 1877.

The bank entered a judgment against me and my sureties, to 299 January Term 1876, for the amount of such $2,500 indebtedness, and feeling that such a record was unjust to my sureties, and embarrassed them, I asked the bank to take that judgment from the record, and accept instead one obligation of $1,000, and three others of $500 each, with sureties perfectly responsible, and thereby obviating the necessity of a court entry record against me and my sureties, and the bank generously consented to do it, and to that end took the judgment off the record on the 24th of May, 1876, and accepted my obligations, with sureties for three notes of $500, and one for a thousand, the latter being signed by myself and R. P. Miller, as surety. These notes were all renewed from time to time until the spring of 1877, when early in March the three $500 notes were paid out of a fund belonging to me, and $195 applied on the $1,000 note, signed by myself and Mr. Miller. Soon after, Mr. Miller and myself gave a note dated the 18th day of April, 1877, for the unpaid portion of the note of $1,000, which with the $195 credited upon it left $805, due upon the face of it, and the interest from the date of maturity of the thousand dol-

lar note, to the 18th of April, 1877, amounted to the sum of $831 and some cents, and for that Mr. Miller joined with me in an obligation which was the winding up of the often renewed $2,500 obligation transaction. It was renewed often, and finally judgment was entered upon it to 768 February Term 1879.

The satisfaction of the cashier of the bank May 24, 1876, was not because of payment by me of the judgment, but to substitute the four notes then given for the obligation upon which judgment had been entered to 299 January Term, 1876.

Cross examined: Q. On what date was the judgment entered to 299 January Term 1876? A. Upon examination of the record in the prothonotary's office, I find that it was on the 21st day of January, 1876.

Q. On what date was it satisfied? A. The same record shows it to have been satisfied May 24, 1876. Q. The judgment was satisfied by the bank at your request, was it not? A. It was. Q. On what date did you make application to the court to have the satisfaction of that judgment stricken off and the judgment opened? A. Judging from the records in the case, I would say that it was done upon the 13th day of February, 1882. Q. The rule to show cause was granted upon that last named date, was it not? A. Yes, sir.

Re-direct: Q. The judgment was satisfied by the bank at your request for what reason? A. It was for the purpose of relieving my sureties from the record of a judgment against them, as it was my debt, and I did not wish to embarrass them in their business. I proposed the satisfaction of the judgment and the exchange of securities, which they consented to by taking the four notes with different and responsible sureties on each note.

On March 19, 1889, the court, MEHARD, P. J., 35th judicial district, specially presiding, filed the following opinion:

The above stated judgments are said to contain usury. The latter is alive, but the former was satisfied on May 24, 1876. It is conceded that the fact alleged is sufficient ground for opening the live judgment; but it is denied that satisfaction should be taken off the other, to open it on the ground of usury, unless it were satisfied under circumstances showing fraud, accident or mistake.

Opinion of Court below.

A debtor cannot be required to pay more than the lawful rate of interest. But a contract to do so is not unlawful, in the sense that it is penal or against public policy. The matter rests wholly with the parties themselves: Second N. Bank's App., 85 Pa. 532; Lennig's App., 93 Pa. 307, Montague v. McDowell, 99 Pa. 269. And yet, however solemn the promise; however often renewed; or however equitable, in the proper sense of the word, that he should pay it, the promisor has a legal right to deduct the excess of interest from his debt.

Where a judgment has been entered by confession, it is the duty of the court to interfere at the instance of the defendant to relieve him from the illegal interest: Wood's App., 1 Penny. 259; otherwise the court would be lending its aid to the collection of money which the act of assembly says the debtor shall not be required to pay.

Whatever mutation the instrument representing the contract may undergo, the original taint remains and entitles the debtor to relief: Campbell v. Sloan, 62 Pa. 481; Miller v. Irwin, 85 Pa. 376. But when the usurious contract is at an end, the fact that a debt growing out of it still exists, does not keep alive or carry with it a right to relief from the usury paid under the former contract, even though the present debtor was responsible under it: Macungie Savings Bank v. Hottenstein, 89 Pa. 318; Bly v. Second N. Bank, 79 Pa. 453.

These are the general principles which enter into this case, so far as it is a question of usury.

It appears that this judgment, No. 299 January Term 1876, was entered against the defendants for $2,667, which was in part usurious. The defendants, with full knowledge of all the facts now alleged, seeking their own advantage, requested the plaintiff to accept four notes of the principal defendant, with sufficient sureties, in payment of the judgment, so that it might be satisfied. This was accordingly done. In the course of time, another judgment, No. 768 February Term 1879, was entered on one of the notes so taken. The principal defendant asks that the satisfaction be taken off the first judgment so as, eventually, to reduce the amount of the second by deducting the usury embraced in the first.

The first judgment was paid. This was the interest of the parties; it was likewise the legal effect of the transaction on

its face: Montague v. McDowell, 99 Pa. 269. Although the new notes grew out of this judgment, they were not a continuation of it or of the contract which was merged in it. If this be true, Campbell v. Sloan, 62 Pa. 481, and the line of cases it represents, does not apply.

The judgment was an adjudication of the amount due the plaintiff. Until opened it was conclusive. If, instead of seeking to have it opened, the defendants saw fit to pay it, the loss of remedy was their own act. One may be relieved from the effect of his own act, if it were induced by fraud, accident or mistake. This extends to taking off an entry of satisfaction: Murphy v. Flood, 2 Gr. 411. If no such fact appear, but on the contrary the defendants, with full knowledge of their rights, procured the entry to be made, it is hard to find ground for their relief.

This, I think, is clearly implied, if not pointedly said, in Montague v. McDowell, supra. Fraud and mistake are the grounds there mentioned as sufficient to strike off the satisfaction of a judgment; but it is not intimated that the simple fact of usury would warrant it. A fraudulent device to conclude the debtor would be sufficient; and this, the Supreme Court there say, might be inferred from the fact that the satisfying of the old judgment and the giving of the new were simultaneous, or nearly so. This strongly implies that something more than the existence of usury, in the first judgment, is necessary; for to what end should an inference of fraud be drawn, if a conceded fact were sufficient?

It is to be borne in mind, that the legal status of the parties to a satisfied usurious judgment, is not the same as to one not satisfied, so far as the usury is concerned. In the latter, the plaintiff needs the machinery of the law to enforce his demand; but if the defendant seeks to change the record of the former, he is the actor and must show good cause. In the latter case, he can rest on his right to deduct and retain the excess of interest; but in the former, as from a legal standpoint he has paid the interest, he must have equitable ground for going behind his act. If to serve his own ends, he induces the plaintiff to accept payment in notes rather than money, and procures the judgment thus paid to be satisfied and is in no way overreached, the fact that he might have avoided his promise be-

fore satisfaction was entered, is not such an equity as should disturb the status quo.

The rule granted at No. 299 January Term 1876, is discharged. The rule granted at No. 768 February Term 1879, is made absolute and the judgment opened accordingly.

An issue is therefore granted to try the fact, how much was lawfully owing on said judgment at the date it was entered. In this issue the parties shall stand as they now are, the note being in the place of a declaration and the defendants to enter plea of payment.

Thereupon the petitioners took this appeal, assigning as error the order of the court discharging the rule granted.

*Mr. Pearson Church* (with him *Mr. Frank P. Ray*), for the appellants:

Counsel cited: Hopkins v. West, 83 Pa. 109; Schutt v. Evans, 109 Pa. 625; Campbell v. Sloan, 62 Pa. 481; Miller v. Irwin, 85 Pa. 376; Wood's App., 1 Penny. 259; Macungie S. Bk. v. Hottenstein, 89 Pa. 328; Monongahela N. Bank v. Overholt, 96 Pa. 327; Hartranft v. Uhlinger, 115 Pa. 273; Guthrie v. Reid, 107 Pa. 251; Montague v. McDowell, 99 Pa. 269.

*Mr. Geo. F. Davenport*, for the appellee.

Counsel cited: Baily v. Brownfield, 20 Pa. 41; Montague v. McDowell, 99 Pa. 265; Murphy v. Flood, 2 Gr. 411; Federal Ins. Co. v. Robinson, 82 Pa. 357; Hopkins v. West, 83 Pa. 109; Campbell v. Sloan, 62 Pa. 481.

PER CURIAM:

This case is ruled by Read's Appeal, just decided. The facts are substantially the same. In the present case, however, there was nothing in the court below in support of the rule to strike off the satisfaction and open the judgment, save the unsupported deposition of the appellant. And in that deposition he states that the judgment was satisfied by the bank at his request. There was no room, therefore, for the allegation that the satisfaction was fraudulently entered, and was a device to cover up usury. The case was entirely void of merit.

The decree is affirmed and the appeal dismissed at the costs of the appellant.